IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| KEITH A. WRIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 6:14-cv-8 |
| | ) |
| CAROLYN W. COLVIN, | ) |
| **Acting Commissioner of Social Security,** | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Keith A. Wright ("Wright") challenges the final decision of the Commissioner of Social Security ("Commissioner") determining that he was not disabled and therefore not eligible for supplemental security income ("SSI"), and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f. Specifically, Wright alleges that the ALJ failed to properly evaluate the opinions of his treating physicians. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **RECOMMEND DENYING** Wright's Motion for Summary Judgment (Dkt. No. 13) and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 15.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Wright failed to demonstrate that he was disabled under the Act.[1] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his

1

evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## **CLAIM HISTORY**

Wright filed for SSI and DIB on March 15, 2011, claiming that his disability began on February 16, 2011.[2] Administrative Record, hereinafter "R." 187–205. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 108–114, 116–129. On July 17, 2012, ALJ Mark O'Hara held a hearing to consider Wright's disability claim. R. 26–60. Wright was represented by an attorney at the hearing, which included testimony from vocational expert Robert Jackson. Id.

On August 28, 2012, the ALJ entered his decision analyzing Wright's claim under the familiar five-step process,[3] and denying Wright's claim for benefits. R. 10–21. The ALJ found that Wright suffered from the severe impairment of a history of non-Hodgkin's follicular

---

ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] Wright's date last insured was December 31, 2015. R. 12. Thus, he must show that his disability began before that date and existed for twelve continuous months to receive DIB. 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

lymphoma status post chemotherapy and radiation treatment. R. 13. The ALJ found that this impairment did not meet or medically equal a listed impairment. R. 14. The ALJ further found that Wright had the residual functional capacity ("RFC") to perform medium work. R. 14. The ALJ determined that Wright is capable of performing past relevant work as a dishwasher, truck driver, fiber optic installer, foreman at a tire recycling center, and short order cook. R. 19. The ALJ also found that Wright could perform other jobs that exist in significant numbers in the national economy, such as packer, cleaner, and assembler. R. 21. Thus, the ALJ concluded that he was not disabled. Wright requested that the Appeals Council review the ALJ's decision. On January 7, 2014, the Appeals Council denied Wright's request for review (R. 1–6), and this appeal followed.

## ANALYSIS

Wright was born in 1958 and has a tenth grade education. R. 32, 40. Wright was diagnosed with grade III non-Hodgkin's lymphoma in February 2011. Wright underwent chemotherapy treatments from March through May 2011, and radiation treatment from May until June 2011. Wright argues that the ALJ erred by rejecting the opinion of his treating oncologist that he has been unable to work since February of 2011 due to the effect of his cancer treatments, and is limited to sedentary work with occasional postural activities and limited handling, fingering and feeling.

The focus of this opinion is on Wright's functional capacity after he concluded chemotherapy and radiation treatments in June 2011. Wright testified that as a result of the chemotherapy and radiation treatments he feels nauseous and fatigued, has lost a lot of weight, and can't sleep. R. 35–36. On February 20, 2012, Wright's treating oncologist, Cecilia MacCallum, M.D., wrote a letter "To Whom It May Concern," stating that Wright has been

3

under her care since his diagnoses with grade III follicular lymphoma of the left occipital scalp region in February 2011. R. 675. Dr. MacCallum stated that Wright is "having a hard time recovering from his treatments. He continues to have nausea and vomiting every day. He also continues to have pain. He has lost 30 pounds. He also continues to have no energy." Id.

On July 2, 2012, Dr. MacCallum completed a Work Related Limitations form. R. 964–68. Dr. MacCallum noted that Wright can likely lift 20–30 pounds for 3–4 hours. She found that his standing and walking were affected by his impairment, and wrote "fatigues easily." R. 965. Dr. MacCallum did not find that Wright's sitting was affected by his impairment and recommended limited handling, fingering and feeling due to Wright's residual neuropathy from chemotherapy. Id. She found that Wright has environmental restrictions such as heights, machinery, temperature, etc. due to fatigue, neuropathy and depression. R. 966. Dr. MacCallum concluded that Wright is limited to sedentary work and cannot perform his past work. R. 967. She noted "P[atien]t is very weak w[ith] neuropathy from both his chemotherapy, lymphoma and resulting depression." R. 968.

The ALJ rejected Dr. MacCallum's opinion that Wright was limited to sedentary work, finding it unsupported by the record because after Wright completed chemotherapy and radiation he had limited physical findings and generally routine and conservative treatment. R. 19. The ALJ noted that Dr. MacCallum's treatment notes make no mention of persistent neuropathy and that Wright has not complained of ongoing fatigue or significant nausea and vomiting since completion of his radiation treatment in June 2011. Id. The ALJ concluded that Dr. MacCallum's assessments were based more on Wright's reported symptoms and limitations than objective findings or diagnostic test results. Id. The ALJ instead adopted the opinions of two

4

state agency physicians concluding that Wright was capable of performing medium work, finding them consistent with the credible evidence of record. Id.

Wright asserts that the ALJ erred by "irrationally" rejecting Dr. MacCallum's opinions and adopting the opinions of the state agency reviewing physicians. Specifically, Wright argues that no evidence in the record contradicts the opinion of Dr. MacCallum. Pl. Br. Summ. J. p. 20.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W. Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)–(5), 416.927(c)(2)–(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010).

Here, the ALJ appropriately considered the factors set forth above and the record as a whole in determining the weight to give Dr. MacCallum's opinion that Wright is limited to a range of sedentary work. The ALJ noted that Dr. MacCallum was Wright's treating oncologist, and reviewed her treatment records in detail. R. 16–19. However, the ALJ found that Dr.

5

MacCallum's opinions were contradicted by the state agency opinions, unsupported by her treatment notes, and based upon subjective, rather than objective, findings. Specifically, the ALJ found that the record did not support Dr. MacCallum's assertions that Wright suffered from persistent neuropathy or ongoing debilitating nausea and fatigue.

Indeed, Dr. MacCallum's treatment notes do not reflect complaints of ongoing neuropathy after Wright finished chemotherapy and radiation treatments. On June 21, 2011, Dr. MacCallum noted that Wright complained of tingling of his hands and feet, but stated, "he does not have any residual neuropathy from his chemotherapy and just noted the tingling starting yesterday. It is no longer present today." R. 552. Thereafter, Dr. MacCallum's treatment notes repeatedly note "no sensory or motor deficits," and "no areas of focal weakness or numbness." R. 548–49, 568–69, 779, 877, 882. Her notes contain no mention of ongoing neuropathy. There is simply no support in the record for Dr. MacCallum's opinion that Wright suffers from ongoing neuropathy and would require work with limited handling, fingering and feeling. R. 965, 968.

Likewise, the record does not support Dr. MacCallum's finding that Wright is weakened due to persistent fatigue and nausea such that he cannot perform medium work. Wright's treatment notes reflect that he complained of nausea and fatigue after he concluded his radiation treatments, but his complaints were sporadic and largely resolved over time. Wright had difficulty making saliva after he finished radiation treatments and took medicine which caused him to feel nauseas. R. 565. However, on July 1, 2011, Dr. MacCallum noted that Wright had no issues with excessive fatigue or vomiting. R. 547. On August 22, 2011, Wright complained of "on and off" vomiting for the last three weeks. R. 792. In September 2011, Wright complained of nausea and vomiting in the morning, and in December 2011, he reported nausea and vomiting every day and losing weight. R. 885.

6

In January 2012, Wright visited Gastroenterology Associates of Central Virginia for complaints of pain in his epigastrium and reported nausea and vomiting in the mornings. R. 710. Wright was diagnosed with epigastric abdominal pain and given samples of Dexilant. R. 710–12. Wright had a stomach biopsy in February 2012, which found no abnormalities, and a colonoscopy which revealed a polyp but no pre-cancerous cells. R. 706–07. In March 2012, Wright reported severe depression and suicidal ideation, and was not motivated or eating. R. 882. Dr. MacCallum sent Wright to the emergency room for evaluation and potential psychiatric admission. R. 880. In the emergency room, Wright was evaluated, given Celexa and referred for counseling. R. 682. A month later, in April 2012, Dr. MacCallum noted that Wright was eating better and only vomiting a little. R. 875–79. Wright's weight had also increased from a low of 154 pounds in December 2011 (R. 888) to 173 pounds in April 2012. R. 878.

Overall, Dr. MacCallum's records do not support the severity of the limitations contained in her opinions. As previously noted, there is no evidence that Wright suffers from ongoing neuropathy. Additionally, while Wright complained of fatigue and nausea, Dr. MacCallum's records routinely reflect largely normal physical examinations with no joint pain, no decreased range of motion, and normal gait. R. 547–48, 567–69, 778, 877, 882. The records do not reflect limitations that would prevent Wright from performing medium work. As the ALJ noted, aside from Wright's initial chemotherapy and radiation treatments, which were successful, his treatment has been generally routine, conservative and unremarkable. He has had normal physical examinations, a normal stomach biopsy, and no evidence of recurrence of his lymphoma.

Additionally, the other medical opinions in the record contradict Dr. MacCallum's conclusions. On July 5, 2011, state agency physician Richard Surrusco, M.D. reviewed Wright's

7

records and concluded that Wright was capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently; and standing, walking and sitting about 6 hours in an 8 hour workday. R. 66–67. On October 31, 2011, state agency physician Robert McGuffin, M.D., reviewed Wright's records and endorsed the limitations set forth by Dr. Surrusco. R. 83.

The ALJ is tasked with reviewing the medical evidence of record, weighing the medical opinions, and arriving at an RFC that fairly represents Wright's functional capacity despite his impairments. Here, the ALJ considered the opinions of Dr. MacCallum, together with all of the evidence in the record, and determined that Wright was capable of performing medium work. The issue before this court is not whether it is plausible that a different fact finder could have drawn a different conclusion or even if the weight of the evidence supports a finding of disability. The standard is whether the ALJ's decision is supported by substantial evidence, which is more than a scintilla and less than a preponderance. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). There may be a myriad of possible decisions in any one case that are supported by substantial evidence. Having reviewed the record as a whole, I find that substantial evidence supports the ALJ's decision to give the opinions of Dr. MacCallum no weight, and recommend that it be affirmed.

<u>**RECOMMENDED DISPOSITION**</u>

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the Defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The clerk is directed to transmit the record in this case to the Honorable Norman K. Moon, United States District Judge, and to provide copies of this Report and Recommendation to

counsel of record.  Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days.  Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings, as well as to the conclusion reached by the undersigned, may be construed by any reviewing court as a waiver of such objection.

    Enter:  August 13, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge